**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

UNITED STATES OF AMERICA          :
                                  :
      v.                          : Docket. No. 20-mj-5666 (KMW)
                                  :
JOHN MICHAEL MUSBACH              :


**DEFENDANT JOHN MUSBACH'S MOTION FOR PRETRIAL RELEASE**

Defendant JOHN MUSBACH, by his attorney, Rocco C. Cipparone, Jr., Esquire, hereby moves the Court pursuant to 18 U.S.C. § 3142 and 18 U.S.C. § 3145, for revocation of the August 20, 2020 Order of Detention, and for an Order releasing him on bond with conditions outlined below.

Title 18 United States Code § 3145 provides:

> (b) REVIEW OF A DETENTION ORDER.-If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. **The motion shall be determined promptly.**

18 U.S.C. § 3145(b)(bold added).

Since the initial hearing on the government's detention motion after which the Court ordered the defendant detained (08-20-2020 Detention Order), circumstances have changed and the defendant has identified additional material conditions which are more than adequate to minimize any perceived generic risk of flight or perceived potential danger to the community. In light of the fact that Mr. Musbach already has been detained since his

1

arrest in August 2020, as well as in light of the Covid-19 pandemic, Mr. Musbach respectfully requests that the Court promptly conduct a hearing on and determine this motion, as required by 18 U.S.C. § 3145(b).

In support of this motion, the defendant will rely on the below proposed conditions and arguments, as well as any other arguments and evidence adduced at any hearing on this motion.

## I.   THIS IS NOT A STATUTORY PRESUMPTION OF DETENTION CASE AND THEREFORE RELEASE IS THE PRESUMED OUTCOME

The government always has the burden of persuasion under the Bail Reform Act, 18 U.S.C. § 3142 (hereinafter "BRA").[1] Regarding a risk of flight analysis, the government's burden is by a preponderance of the evidence, and regarding a danger to the community analysis, the government's burden is by clear and convincing evidence. *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986). *See also* 18 U.S.C. § 3142(f)(clear and convincing standard applied to any finding regarding the safety of any other person or the community). **Furthermore, the BRA provides a "presumption for bail except in certain circumstances", which circumstances do not exist in the instant case.**[2] *United States v. Strong*, 775 F.2d 504, 505 (3d Cir. 1985). *See also U.S. v. Byrd*,

---

[1] *U.S. v. Stone*, 608 F.3d 939, 946 (6th Cir. 2010) ("Regardless of whether the presumption applies, the government's ultimate burden is to prove that no conditions of release can assure that the defendant will appear and to assure the safety of the community.")

[2] The circumstances creating a rebuttable presumption are not present in the instant case. *See* 18 U.S.C. § 3142(e)(2) and (e)(3)(setting forth when rebuttable presumption arises).

969 F.2d 106, 109 (5th Cir. 1992) ("There can be no doubt that this Act clearly favors nondetention.")

Release is warranted here because there are conditions of bail that reasonably will assure both Mr. Musbach's appearance in court and the safety of the community. As the Supreme Court held in *United States v. Salerno*, 481 U.S. 739 (1987), "[i]n our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception." *Salerno*, 481 U.S. at 755. This presumption of release is encapsulated in the BRA. The statute states that the Court "shall order" pretrial release except in certain narrow circumstances. 18 U.S.C. § 3142(b). Even if the Court determines under § 3142(c) that an unsecured bond itself is not sufficient comfort for release of a defendant, the

> Judicial officer **shall order the pretrial release** of the person-
> (A) subject to the condition that the person not commit a Federal, State, or local crime during the period of release and [subject to DNA sample in specified applicable cases], and
> (B) **subject to the least restrictive further condition, or combination of conditions**, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community" 18 U.S.C. § 3142 the Court "shall order" release subject to "the least restrictive further conditions" that will "*reasonably assure*" the defendant's appearance in court and the safety of the community.

18 U.S.C. § 3142(c)(1) (bold added). Under this statutory scheme, "it is only a 'limited group of offenders' who should be detained pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d

Cir. 1987) (quoting S. Rep. No. 98-225, at 7 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3189); *Byrd*, 969 F.2d at 110 ("There can be no doubt that this Act clearly favors nondetention.").

Consistent with the fact that under the "eighth amendment … there is a substantive liberty interest in freedom from confinement", *United States v. Perry*, 788 F.2d 100, 112 (3d Cir. 1986), **the burden of persuasion always rests with the government** (both in presumption and non-presumption cases).  *Perry*, 788 F.2d at 115("[W]e hold that … the burden of persuasion ultimately rests upon the United States").  *See also United States v. Jessup*, 757 F.2d 378, 381-384 (1st Cir. 1985). Indeed, the Third Circuit in *Perry* recognized "the grave invasion of the most fundamental of all personal liberties that occurs when preventive detention is ordered and the high risk of an erroneous judgment as to the highly speculative determination of future dangerousness".  *Perry*, 788 F.2d at 114.

## II.  THERE IS A COMBINATION OF CONDITIONS THAT WILL REASONABLY ASSURE THE APPEARANCE OF THE DEFENDANT AND THE SAFETY OF OTHER PERSONS AND THE COMMUNITY

John Musbach proposes an Order with the following combination of conditions for release:

1. Execution of a **$100,000 Personal Recognizance Bond,** to be **cosigned** by each of Mr. Musbach's parents James Musbach and Elizabeth Musbach, and by Carl Williams. In the alternative, if the Court believed such to be a necessary condition, although the defendant contends that such is unnecessary as a "least restrictive further condition" (18 U.S.C. § 3142(c)(B)), Mr. Musbach

(through his Trustees[3]) actually would post $100,000 to satisfy a bond;

2. James and Elizabeth Musbach to act as **third-party custodians** regarding their son (the defendant), including the requirement to report any violation of a release condition to the court. **Indeed, in a show of intent and commitment to such if required by the Court, James and Elizabeth Musbach have secured an apartment in the same apartment building (indeed adjacent to that in which Mr. Musbach and Mr. Williams would continue to live).**

   **They have placed a deposit on the apartment, and will promptly sign a one-year lease (subject to further renewal) if the Court grants this motion and requires as a condition that they come to NJ. It is submitted that this condition is not necessary as part of the "least restrictive" conditions for bail or to insure safety and minimize risk of flight. However, although not preferable, if that is what it takes for release of Mr. Musbach then they do prefer to do so through the conclusion of any trial or other disposition in this case;**

3. **James and Elizabeth Musbach as Trustees to control access to and use of funds belonging to Mr. Musbach** (a trust already has been established and the funds transferred, as discussed more fully *infra*). James and Elizabeth Musbach (and John Musbach of course) are willing to abide by and be subject to a bail order requiring that no funds be provided directly to Mr. Musbach or used to facilitate any travel unauthorized by the Court, and that otherwise such funds be used only for living expenses for Mr. Musbach (housing, food, clothing, personal care items, etc), medical expenses, legal fees and related expenses.

4. Carl Williams to act as **third party custodian** regarding the defendant, including the requirement to report any violation of a release condition to the court;

5. Mr. Musbach would remain on **24-hour house arrest** with electronic monitoring, with the standard exceptions permitted by this Court, and with exception for gainful

---

[3] John Musbach's parents have been made Trustees of all of his financial assets pursuant to a Trust and accounts to which John Musbach no longer has access, as further discussed *infra* and in **Exhibit D** hereto.

employment;

6. Defendant Musbach to **refrain from having any Internet access** and would not be permitted the use of any electronic communication device other than a flip cellular telephone that has no ability to access the Internet;

7. Defendant Musbach seek employment (which employment, consistent with #6 above, would not require any Internet access);

8. Defendant Musbach to **reside at his former residence** (the address of which is omitted from this public filing but which address the Court and U.S. Pretrial Services already are aware) with his significant other Carl Williams;

9. Defendant Musbach surrender any passport (his is expired as outlined in the Pretrial Services Report) and not apply for any new passport;

10. Defendant Musbach **report to Pretrial Services** as directed;

11. Defendant Musbach undergo **medical, psychological, or psychiatric treatment,** if Pretrial Services deemed such to be needed;

12. Defendant Musbach refrain from:

    o possessing a firearm, destructive device, or other dangerous weapon;

    o excessive use of alcohol;

    o any use of a narcotic drug or other controlled substance without a prescription;

    o committing another federal, state or local crime;

    o any contact with any known witness or alleged victim except through counsel or any investigators or others working with defendant's counsel.

## III.  ANALYSIS OF THE FACTORS UNDER 18 U.S.C. § 3142(g) AND OTHER FACTORS FAVOR RELEASE

Analysis of the factors under 18 U.S.C. § 3142(g) and other

factors favor release.  The salient factors and analysis are:

**(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence**

While the crime charged is serious, no actual violence is alleged to have occurred; and John Musbach[4]  (as alleged on page 10 of the Affidavit in support of the Criminal Complaint) did indicate that he wanted to cancel the allegedly procured action. It also is important to note that the conduct is alleged to have occurred in May 2016, over four (4) years before the defendant's arrest in this case.

**(2) the weight of the evidence against the person**

Of the BRA factors, "the weight of the evidence is the least important, and the statute neither requires nor permits a pretrial determination of guilt." *U.S. v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).  *See also United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985) ("the weight of the evidence is the least important of the various factors").

Furthermore, "This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *U.S. v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010).  Here, there is no evidence of dangerousness other than the nature of the alleged charges.  Mr. Musbach

---

[4] By referencing such and pointing out this aspect of the factual allegations, the defense is not acquiescing that to the extent that the alleged communications even are authentic or occurred, that it was indeed the defendant who engaged in those communications.  The acceptance of that allegation is only for purposes of this aspect of the bail motion.

has no violence in his past.

Also, although not the focus of this factor as stated above, this case is not a clear-cut case in which there is a proverbial "smoking gun": indeed there are significant potential weaknesses in the government's case.  While at this stage of course the defense is hampered by many things, including the impact that the Covid-19 pandemic continues to have on defense investigation which of necessity – as is almost everything else in the country – moving more slowly that in non-pandemic times, several things are known even from the government's Criminal Complaint and Affidavit.

The alleged communications were obtained by some undisclosed confidential source who in January 2019[5] supposedly hacked into a "dark website" to obtain these alleged and indeed incomplete communications.  **The government fails to reveal the name of this alleged website, or the identity of the alleged hacker,** and merely has its agent in footnote 1 on page 5 of the Affidavit in support of the complaint allege that the source is "believe[d]" to be credible by the agent.

That untested "belief" is devoid of any specific basis on which the Court or the defense could conclude that such is

---

[5] *See* Paragraph 12 of Affidavit in support of Criminal Complaint)

indeed true.  In addition, it is clear that the alleged communications are only snippets of communications, and that this hacker either did not obtain or did not provide the full context of such, which limits the reliability, context, and efficacy of what allegedly was obtained.  The hacker certainly easily could have manipulated the information, and it appears that the hacker obtained the information illegally through computer intrusion, itself a federal crime. Furthermore, this hacking occurred in January 2019, over 2.5 years after the alleged communications.

The foregoing leads to a fair inference and challenge that the communications selectively were edited or manipulated by this source hacker, if even authentic.  When coupled with the presumption of innocence, of course, this factor should therefore mitigate in favor of pre-trial release.  18 U.S.C. § 3142(j)("PRESUMPTION OF INNOCENCE.- Nothing in this section shall be construed as modifying or limiting the presumption of innocence.").

Certainly the hacker source's motivations to obtain and to provide that information to the government – financial remuneration or criminal prosecution leniency for example – are relevant to a determination of the strength or weakness of the case against the defendant including for purposes of this motion. The government should not be permitted to hide

9

behind source confidentiality or exposure of other investigations[6] to avoid scrutiny when it seeks pre-trial detention, which detention causes "the grave invasion of the most fundamental of all personal liberties….". *Perry*, 788 F.2d at 114.  If the government continues to do so of course the Court should infer strongly against the government in the determination of whether it has met its burden of persuasion in connection with this motion.

Therefore to the extent that the government seeks to rely on the alleged strength of its case in opposition to this motion, and the Court is inclined to weigh it in that context, an evidentiary hearing during which the defense is permitted to probe these issues certainly is appropriate and warranted.

**(3) the history and characteristics of the person, including-**
**(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings;

- **Mental Condition.**  Mr. Musbach has been determined to have neurocognitive impairment, and has had a history of mental health treatment dating back to age 10.  This neurocognitive impairment was diagnosed by State of NJ employed medical professionals who evaluated Mr. Musbach in connection with a psycho-sexual evaluation for the Court (an Avenel evaluation) in connection with his

---

[6] The government did so in footnote 2 (page 5) of the agent's Affidavit in support of the Criminal Complaint.

prior State criminal case.  **The testing and evaluation
determined that Mr. Musbach did not have "any sexual
interest in minors"** (bold added).[7]

Mr. Musbach and society would benefit more from
evaluation and treatment in the pretrial phase than
incarceration.

- **Family and Community Ties and Length of Residence in the
Community**.  Mr. Musbach has family ties to the
community.  His significant other Carl Williams and he
have lived in New Jersey for the past five (5) years
approximately.  They are committed to a lease agreement
at their current residence.

  Also, as outlined above, Mr. Musbach's parents are
willing to leave their home in California and reside in
NJ, in the same building and on the same floor, as Mr.
Musbach.  See **Exhibit B** – screenshot regarding deposit.
That extraordinary measure demonstrates the strength of
the family ties Mr. Musbach has, and the seriousness
with which his parents take the commitment to be third
party custodians and sureties.

- **Employment.**  Mr. Musbach has a history of sustained
gainful employment and was considered a valuable
employee, as reflected in the Pretrial Services Report.
*See also* **Exhibit C** (letter from Scott DeGirolamo, former
employer). Mr. Musbach – if permitted by the Court –
would seek employment that does not require access to
the Internet consistent with the proposed bail provision
that he have no such access.

- **Financial Resources**.  The access to financial resources
was an articulated concern by the Court previously.
Since then Mr. Musbach employed the services of attorney
Joseph Viola, Esq., to create and transfer all
substantial assets owned by Mr. Musbach into a Trust to
which John Musbach does not have access (his parents are
the Trustees), and in one instance into the sole
possession and control of his mother Elizabeth Musbach.
**Exhibit D** (01-13-2021 letter from Viola Esq. redacted as
to account identifying information).  James and

---

[7] This neurocognitive impairment was diagnosed by State of NJ employed medical
professionals who evaluated Mr. Musbach in connection with an Avenel evaluation
regarding his prior State criminal case.  While not attached hereto, it will be
provided to the Court and government counsel, as well as Pretrial Services, by
email and **it is respectfully requested that such be maintained UNDER SEAL given
that it is a medical record and Confidential, as it contains personal and
medical information.**  It is **Exhibit A** to this motion (which on the public
filing is just an exhibit cover page).

Elizabeth Musbach solely now control access to those funds and are of course willing to abide by the proposed Order that no funds be provided directly to Mr. Musbach or used to facilitate any unauthorized travel, and that otherwise such funds be used only for living expenses for Mr. Musbach (housing, food, clothing, personal care items, etc.), medical expenses, and legal fees and related expenses.

- **Past Conduct/Criminal History/Record Concerning Appearance at Court Proceedings.** Mr. Musbach's prior conviction was of a non-violent nature, and the alleged instant conduct as discussed *supra* was approximately 4.5 years ago. Mr. Musbach never has had a failure to appear in Court. He was polite and cooperative during his arrest in the instant matter, with no resistance either verbal or physical.

  In addition, the alleged instant conduct was prior to Mr. Musbach's sentencing in his prior State criminal case. Mr. Musbach never once violated any condition of the sentence previously imposed upon him, or his lifetime supervision. The undersigned has spoken with New Jersey State Parole Officer Linval Jones, who supervised Mr. Musbach for a period of time. Probation Officer Jones advised that:

  - ➢ Mr. Musbach always was polite and cooperative;

  - ➢ Mr. Musbach always complied with any requests by Officer Jones;

  - ➢ Mr. Musbach always reported if and as directed, and made himself available for home visits as requested;

  - ➢ Mr. Musbach maintained employment and presented proof when requested;

  - ➢ Ofr. Jones never perceived any danger or violent nature from Mr. Musbach;

  - ➢ Ofr. Jones is not aware of any infractions of supervision at any time by Mr. Musbach;

  - ➢ Ofr. Jones advised he would confirm such to U.S. Pretrial Services if inquired.

- **History relating to drug or alcohol abuse.** None.

**(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law**

12

Mr. Musbach's prior State criminal case was pending, but again that the conduct alleged in the instant case was indeed 4.5 years ago.  As discussed *supra*, since the time of his sentencing he has proven himself to be a model supervisee.

**(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release**

Here, there is no demonstrable risk of flight or facts to support any such conclusion of ongoing dangerousness, so any perceived danger is inapposite.  Importantly as articulated by the Fifth Circuit, "we find ourselves in agreement with the First and Third Circuits: a defendant's threat to the safety of other persons or to the community, standing alone, will not justify pre-trial detention." *U.S. v. Byrd*, 969 F.2d 106 (5th Cir. 1992).

Furthermore, there is no alleged danger posed that will not be adequately minimized by the proposed conditions.  The alleged victim of the crime is not even a necessary witness to the government's case, and there is not even any such potential motivation[8] in that respect. The demonstrable compliance with all terms of his State Court post-sentencing supervision (as discussed *supra*) over the past approximately 4.5 years supports the only conclusion: that release and supervision of Mr. Musbach

---

[8] This reference is made not to suggest that even if there were that Mr. Musbach would act on such, but simply to iterate the lack of any such potential motivation.

poses no danger to other persons or the community.

**(5) Other Salient Factors: The Covid-19 Pandemic – Delay and Risky Exposure**

As indicated, "[**i]n our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception.**" *Salerno*, 481 U.S. at 755 (bold added).  Here, especially during the Covid-19 pandemic where trials have essentially shut down and any start-up of trials in this District appears to be at a long time away, detention of Mr. Musbach pending his trial will be longer than normal.  That is simply a pragmatic recognition of the obvious, and because his case is a lot newer than many others that already were pending, it is realistic to recognize that continued delay.

Indeed, it is unlikely that this case would even reach trial in 2021, and certainly not until the last part of 2021 at the earliest. Mr. Musbach has not yet been indicted.

It is indeed injurious to detain a presumed innocent person at all, let alone for as long as this detention will last, and the Court should strongly consider that fact in favor of release on these very restrictive but adequate conditions.  *See United States v. Gonzales Claudio*, 806 F.2d 334, 341 (2d Cir. 1986) ("Detention that has lasted for fourteen months and, without speculation, is scheduled to last considerably longer, points strongly to a denial of due process. *See United States v. Zannino,* 798 F.2d 544, 548 (1st Cir. 1986) (court assumes "that

in many, perhaps most, cases sixteen months would be found to exceed the due process limitation on pretrial confinement").").

Certainly, under house arrest and the conditions proposed, Mr. Musbach also will be better insulated from exposure to Covid-19 than in jail.  It is indisputable that like nursing homes and cruise ships, and to an extent even more so because of limitations inherently present in a jail environment, jails are extremely dangerous in a pandemic, given the impossibility of social distancing in a confined space.  Jeffrey Keller, *COVID-19 in Jails? It Might Get Ugly*, Medpage, (March 12, 2020) (https://www.medpagetoday.com/blogs/doing-time/85366). As the former chief medical officer of Rikers Island jail explained, unlike free people, detainees cannot engage in "'social distancing' and 'self-quarantine' and 'flattening the curve' of the epidemic—all of these things are impossible in jails and prisons, or are made worse by the way jails and prisons are operated."[9]

Anecdotally, real people incarcerated are having modest

---

[9] Jennifer Gonnerman, *How Prisons and Jails can Respond to the Coronavirus*, The New Yorker, (March 14, 2020), https://www.newyorker.com/news/q-and-a/how-prisons-and-jails-can-respond-to-the-coronavirus ("it's going to be very, very difficult to deliver a standard of care either in the detection or the treatment of people who are behind bars. I just have really grave concerns"). *See also* Dr. Lipi Roy, *Infections And Incarceration: Why Jails And Prisons Need To Prepare For COVID-19 Now,* Forbes, (March 11, 2020), https://www.forbes.com/sites/lipiroy/2020/03/11/infections-and-incarceration-why-jails-and-prisons-need-toprepare-for-covid-19-stat/#1fa6b08e49f3 ("Hand sanitizers, for instance, are often considered contraband . . . Other harsh realities of jail life that prevent proper application of CDC recommendations include limited access to toilet paper and paper towels; and handcuffs prohibit the use of hands to cover one's mouth.").

sentences turned into death sentences.  As an anecdotal example, the undersigned counsel was notified recently that while a former client's motion for compassionate release from federal incarceration due to potential Covid risks was pending in the U.S. District Court for the Eastern District of PA, that client indeed then contracted Covid and sadly died from complications related to such. He was about 21 months into a 63-month sentence, which turned into a death sentence. Clearly there are real risks in the heightened environment of jail.

The CDC has noted that correctional facilities "present[] unique challenges for control of COVID-19 transmission among incarcerated/detained persons", and that detained persons face a heightened risk of contracting the virus due to the living conditions and limited options for medical isolation. https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html.

Pre-trial release of Mr. Musbach --  **a presumed innocent man** -- on the conditions requested herein, also would place him in a much less risky environment regarding exposure to Covid-19, where he can properly social distance only with persons known to him, and would not have the risk of the introduction of Covid-19 into the facility by staff members as occurs now daily, and by the other inherently dangerous factors present in jail.

16

**CONCLUSION**

Clearly there is no factual basis on which to conclude that John Musbach presents any risk of non-appearance at any future proceedings.  Any perceived risk of danger based on allegations of conduct occurring over four (4) years ago adequately will be minimized by the proposed conditions.

**WHEREFORE,** it respectfully is requested that the defendant John Michael Musbach be released on the conditions of bail specified in Section II above, and any other condition which the Court may find is the "least restrictive further condition"[10] necessary to insure appearance of Mr. Musbach as required and the safety of any other person or the community.

Respectfully submitted,

/s/ Rocco C. Cipparone, Jr.
_____
Rocco C. Cipparone, Jr., Esq.
Attorney for Defendant John Musbach

---

[10] 18 U.S.C. § 3142(c)(B) provides that release shall be "subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community…."

17

**EXHIBIT A**


**MEDICAL REPORT REQUESTED TO BE FILED**

**UNDER SEAL AND NOT INCLUDED IN THE**

**PUBLIC FILING**

**EXHIBIT B**

# Merchant: SEB Realty

7 Johnson Drive
Raritan, NJ 08869                                (856) 784-9501
US

Order Information

Description:            KW-holding fee -apt 4-3
Order Number:                                    P.O. Number:
Customer ID:                                     Invoice Number:

**Billing Information**                          **Shipping Information**
Elizabeth Musbach                                Elizabeth Musbach
█████

|  |  |
|---|---|
| Shipping: | 0.00 |
| Tax: | 0.00 |
| **Total:** | **USD 500.00** |

Payment Information

Date/Time:              13-Nov-2020 13:06:49 PST
Transaction ID:         62671142787
Transaction Type:       Authorization w/ Auto Capture
Transaction Status:     Captured/Pending Settlement
Authorization Code:     09512D
Payment Method:         Visa █████

**EXHIBIT C**

CGPC Solutions
430 Fairmount Ave.
Philadelphia, PA.
19123

RE: John Musbach                                                9/8/2020

To whom it may concern,

John was employed by Computer Guy PC Solutions in 2017, and 2018. During that time, John was
professional, and timely. He did a good job. His performance reviews were always top notch. John
seemed even tempered, and completely forthcoming about his past. I gave John an opportunity being
aware of his past, and he did not let me down. John continued to stay in touch after we stopped working
together, and he is eligible for rehire.

Please feel free to reach out to me if you would like to know more about John's work habits. I will vouch
for John.

Sincerely,

Scott DeGirolamo
Owner - Computer Guy, and CGPC Solutions

**EXHIBIT D**

# JOSEPH R. VIOLA, P.C.

A PROFESSIONAL CORPORATION

1515 MARKET STREET
SUITE 1200
PHILADELPHIA, PA 19102

JOSEPH R. VIOLA

LL.M. (TAXATION)
MEMBER PA & NJ BARS

(215) 854-6310
FAX (215) 854-4091

Email: jrviola@comcast.net

January 13, 2021

Rocco C. Cipparone, Jr., Esquire
Law Offices of Rocco C. Cipparone, Jr.
203-205 Black Horse Pike
Haddon Heights, NJ 08035

> **Re:** **United States of America v. John Michael Musbach**
> **Case No. 20-MJ-5666-KMW-1**
> **United States District Court for the District of New Jersey**

Dear Attorney Cipparone:

As you know, I was retained by your client, John Michael Musbach, to handle the legal work necessary to transfer legal and factual ownership, possession and control of all of Mr. Musbach's financial assets to a Trust created for that purpose so that Mr. Musbach would cease to have access to those financial assets.

I am pleased to report that the process has been successfully completed such that all of Mr. Musbach's financial assets are now owned and exclusively controlled by the John Michael Musbach Trust, EIN          , a trust created under and governed by the laws of the State of New Jersey. Mr. Musbach's parents, James and Elizabeth Musbach are the Co-Trustees of the Trust and have sole control of the Trust assets. **John Musbach has no right or ability to access or control any of the funds/assets, only James and Elizabeth can do so.**

The financial assets at issue were a Charles Schwab & Co. Brokerage Account and Ethereum (ETH) cryptocurrency accounts with Kraken, a company based in San Francisco, California, and BlockFi, a company based in Jersey City, New Jersey. The BlockFi account also included a Bitcoin (XBT) component representing interest paid on the Ethereum deposit.

The Charles Schwab assets have been transferred to a Trust Brokerage Account with          Brokerage Services owned by the John Michael Musbach Trust; the Charles Schwab account has been closed. The Kraken and BlockFi assets have been combined and transferred to a          account owned by Co-Trustee Elizabeth Musbach. The Kraken and BlockFi accounts have been closed.

# JOSEPH R. VIOLA, P.C.

A PROFESSIONAL CORPORATION

**Rocco C. Cipparone, Jr., Esquire**
**Law Offices of Rocco C. Cipparone, Jr.**
**January 13, 2021**
**Page Two**

      In addition to the financial assets enumerated above, Mr. Musbach had conventional checking and savings accounts with ▆▆▆▆ Bank. Both of those accounts now have a $0.00 balance but have not been closed pending further instructions.

      I will gladly furnish a copy of the Trust Agreement and supporting documentation concerning the asset transfers upon request. I am also available to testify in Court concerning the contents and subject matter of this letter and to submit a formal declaration or certification.

      Very truly yours,

      JOSEPH R. VIOLA, P.C.

      BY:
      Joseph R. Viola, Esquire

JRV:sm